UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Robert V. Cavanagh
and Rhoda M. Cavanagh

    v.                                     Civil No. 12-cv-394-LM
                                              Opinion No. 2013 DNH 035
Northern New England
Benefit Trust

**O R D E R**

In an action that has been removed from the New Hampshire Superior Court, Robert and Rhoda Cavanagh have petitioned for a declaratory judgment concerning the amount of the lien that may be asserted by the administrator of Robert's employee-benefit plan against a recovery he received from a third-party tortfeasor. Specifically, they seek to reimburse the plan administrator, Northern New England Benefit Trust ("NNEBT"), in an amount less than the total amount of benefits provided by NNEBT under the plan. NNEBT has filed a counterclaim under 29 U.S.C. § 1132(a)(3) in which it asks the court to enforce an equitable lien against Robert Cavanagh ("Cavanagh")[1] equal to the full amount of the medical expenses it paid on his behalf plus the full amount of the short-term disability benefits it paid

---

[1] While NNEBT's counterclaim seeks an order enforcing a lien against Cavanagh, the court recognizes that liens are placed against property (including sums of money), not property owners.

him. Before the court are the Cavanaghs' motion for partial summary judgment and NNEBT's motion for judgment on the administrative record. Both motions are duly opposed and, for the reasons that follow, both are denied.

## Summary Judgment Standard

"Summary judgment is warranted where 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" McGair v. Am. Bankers Ins. Co. of Fla., 693 F.3d 94, 99 (1st Cir. 2012) (quoting Fed. R. Civ. P. 56(a); citing Rosciti v. Ins. Co. of Penn., 659 F.3d 92, 96 (1st Cir. 2011)).

## Background

The facts in this section are drawn from the parties' Joint Statement of Material Facts ("Jt. Statement"), document no. 13, and the exhibits attached thereto.

In July of 2011, while Cavanagh was riding a motorcycle, he was hit by a truck. At the time of the collision, Cavanagh was employed by Anheuser-Busch, Inc., and he was a participant in an Anheuser-Busch employee-benefit plan administered by NNEBT.

The plan document provides that the plan does not cover "[e]xpenses incurred by a Participant to the extent any payment is received for them either directly or indirectly from a third

party tortfeasor . . . ."  Jt. Statement, Ex. C (doc. no. 13-3).

Under the heading "Subrogation/Right of Reimbursement," the plan document states:

> If a Participant incurs a Covered Expense for which, in the opinion of the plan or its claim administrator, another party may be responsible or for which the Participant may receive payment as described above:
>
> 1. Subrogation: The Plan shall, to the extent permitted by law, be subrogated to all rights, claims or interests that a Participant may have against such party and shall automatically have a lien upon the proceeds of any recovery by a Participant from such party to the extent of any benefits paid under the plan.  A Participant or his/her representative shall execute such documents as may be required to secure the plan's subrogation rights.
>
> 2. Right of Reimbursement: The plan is also granted a right of reimbursement from the proceeds of any recovery whether by settlement, judgment, or otherwise.  This right of reimbursement is cumulative with and not exclusive of the subrogation right granted in paragraph 1, but only to the extent of the benefits provided by the plan.

Id.  Under the heading "Lien of the Plan," the plan document states:

> By accepting benefits under this plan, a Participant:
>
> • grants a lien and assigns to the plan an amount equal to the benefits paid under the plan against any recovery made by or on behalf of the Participant . . .;
>
> • agrees that this lien shall constitute a charge against the proceeds of any recovery and the plan shall be entitled to assert a security interest thereon;

3

> - agrees to hold the proceeds of any recovery in trust for the benefit of the plan to the extent of any payment made by the plan.

Id. Finally, the plan document includes the following miscellaneous terms relevant to the claims in this case:

> - The plan's right of recovery shall be a prior lien against any proceeds recovered by the Participant. This right of recovery shall not be defeated nor reduced by the application of any so-called "Made-Whole Doctrine" . . . or any other such doctrine purporting to defeat the plan's recovery rights by allocating the proceeds exclusively to non-medical expense damages.
>
> - No Participant hereunder shall incur any expenses on behalf of the plan in pursuit of the plan's rights hereunder, specifically; no court costs, attorneys' fees or other representatives' fees may be deducted from the plan's recovery without the prior express written consent of the plan. This right shall not be defeated by any so-called "Fund Doctrine", "Common Fund Doctrine", or "Attorney's Fund Doctrine".

Id.

Shortly after his accident, Cavanagh executed an agreement with NNEBT under which NNEBT promised to pay his medical expenses and to pay him weekly disability income benefits. That agreement also included the following term:

> [F]rom any monies received by way of any recovery, by judgment, settlement, compromise or otherwise, by or from any third party whose conduct is claimed to have caused the injury or illness [for which the participant has received benefits under the plan], Participant agrees to first reimburse the Trust to the extent of all payments made by the Trust hereunder without reduction for attorney's fees or costs.

4

> Participant agrees and understands that the Trust is to be reimbursed at 100% for all disbursements for weekly indemnity, medical, hospital, nursing and related expenses.

Jt. Statement, Ex. A (doc. no. 13-1).

As a result of his accident, Cavanagh was totally disabled from work for approximately four months. For that disability, he received $7,831.05 in weekly benefits from NNEBT. In addition, NNEBT paid $39,118.40 in medical bills on Cavanagh's behalf. Cavanagh has received $200,000 from two insurance policies covering the driver who struck him, and he is continuing to pursue a recovery of $50,000 from his own underinsured motorist coverage.

In the petition for declaratory judgment they brought against NNEBT in the Superior Court, the Cavanaghs made the following relevant factual allegations:

> Northern New England Benefit Trust, through its agents, notified plaintiffs' counsel that it claimed liens on plaintiffs' recoveries. Subject to New Hampshire law of proration of costs and fees and the doctrine of equitable apportionment, plaintiffs' counsel acknowledged said liens.
>
> . . . .
>
> As funds were received by plaintiffs' counsel, he began negotiations with Northern New England Benefit Trust . . . to pay the liens claimed by Northern New England Benefit Trust.
>
> Northern New England Benefit Trust refused to accept the standard New Hampshire practice of reducing the lien by one-third to cover the lienor's share of

5

> attorney's fees. Northern New England Benefit Trust refused to pay any portion of costs incurred in obtaining the $200,000 in payments.
>
> Plaintiffs' counsel also sought "equitable apportionment" of the collected funds. <u>Dimick v. Lewis</u>, 127 NH 141 (1985). Plaintiffs' recovery does not fully compensate plaintiffs for their injuries. Northern New England Benefit Trust refused to reduce its recovery to reflect plaintiffs' inability to collect the full value of their cases. Plaintiffs have consistently alleged that the full and fair value of [their] claims is at least $400,000. The maximum that plaintiffs will recover from applicable insurance is $250,000.

Notice of Removal, Attach. 1 (doc. no. 1-1) 2-3.

Based upon the foregoing factual allegations, the Cavanaghs seek the following relief: (1) a declaration that NNEBT's liens are subject to a one-third reduction to cover the attorney's fees Cavanagh incurred in recovering from the third-party tortfeasor; (2) an order charging NNEBT a pro-rata share of the costs Cavanagh incurred in recovering settlement proceeds; (3) a declaration of the full and fair value of Cavanagh's claims against the third-party tortfeasor, to facilitate an equitable apportionment of his recovery. While the Cavanaghs are clear about the relief they seek, their petition is not so clear about the legal basis for that relief. However, given their references to "New Hampshire law of proration of costs and fees" and "standard New Hampshire practice," and their citation of <u>Dimick</u>, an opinion of the New Hampshire Supreme Court, there is

good reason to construe their request for relief as being rooted in New Hampshire common law and no reason to construe it any other way.[2]

After NNEBT removed the case, it asserted a counterclaim, pursuant to 29 U.S.C. § 1132(a)(3), in which it asks the court to "enter an order enforcing against Counterclaim Defendant Cavanagh an equitable lien to the benefit of NNEBT in the amount of $46,949.45." Answer & Countercl. (doc. no. 7) 4. The amount of the lien that NNEBT asks the court to enforce equals the full amount of the benefits Cavanagh received from NNEBT.

## Discussion

Before turning to the two motions before the court, it is useful to restate precisely what this case is about. The Cavanaghs seek a declaration that they have a legal right to reimburse NNEBT in some amount less than the full amount of the benefits Cavanagh received from NNEBT. NNEBT's claim, in turn, is based upon the premise that it has a legal right to full reimbursement from Cavanagh.

---

[2] In their memorandum of law, the Cavanaghs argue that "[t]he make-whole and common fund doctrines have been viable law in New Hampshire since Dimick v. Lewis, 127 NH 141 (1985)," doc. no. 14-1, at 11, and in support of that proposition they cite Wolters v. American Republic Insurance Co., 149 N.H. 599 (2003) and Lutkus v. Lutkus, 141 N.H. 552 (1997), which further suggests that their petition is rooted in New Hampshire law.

7

The Cavanaghs' argument for summary judgment goes something like this: (1) NNEBT's claim for full reimbursement is based upon Harris v. Harvard Pilgrim Health Care, Inc., 208 F.3d 274 (1st Cir. 2000); (2) Harris has been effectively overruled by three subsequent decisions from the United States Supreme Court, Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006), and CIGNA Corp. v. Amara, 131 S. Ct. 1866 (2011); and (3) US Airways, Inc. v. McCutchen, 663 F.3d 671 (3d Cir. 2011), cert. granted, 133 S. Ct. 36 (2012), and CGI Technologies & Solutions, Inc. v. Rose, 683 F.3d 1113 (9th Cir. 2012), both allow the application of equitable principles to limit the reimbursement that a plan participant must make to a plan administrator on account of his or her recovery from a third-party tortfeasor.[3] NNEBT contends that: (1) Harris has not been overruled by the Supreme Court decisions the Cavanaghs cite; and (2) this court cannot follow US Airways or CGI

---

[3] The Cavanaghs conclude the memorandum of law in support of their motion for summary judgment this way: "Consistent with the Supreme Court's recent decisions, this Court should strike down Harris . . . as bad law and align itself with the Third and Ninth Circuits . . ." Doc. no. 14-1, at 12. The court will give the Cavanaghs the benefit of the doubt and presume that what they meant to say is that this court should predict that the First Circuit, if presented again with the question it decided in Harris, would disavow its decision in Harris in light of intervening Supreme Court decisions.

Technologies because those decisions run counter to Harris, which this court is obligated to follow.

The court prefaces its analysis by briefly describing the holdings of the opinions that both parties seem to agree are key to resolving this case. In Harris, where an ERISA plan participant filed suit to contest a lien filed by his plan's administrator against his recovery from a third-party tortfeasor, see 208 F.3d at 277, and the administrator "counterclaimed for lien enforcement," id., the court of appeals vacated the district court's order directing the administrator to cover a pro rata share of the members' attorney's fees, see id. at 279, and rejected the district court's ruling that "the common-fund, fee-shifting doctrine should be adopted as federal common law under ERISA," id. at 277. The relevant holding in Harris, then, concerns the content of the federal common law under ERISA.

In Knudson, where ERISA fiduciaries filed a claim under 29 U.S.C. § 1132(a)(3) against a plan participant for enforcement of a benefit plan's reimbursement provision, see 534 U.S. at 208, the Supreme Court held that because the statute only authorizes actions to obtain equitable relief, and the fiduciaries sought legal restitution rather than equitable restitution, their suit was not authorized by § 1132(a)(3), see

id. at 217.  In Sereboff, the Court held that where a fiduciary sought reimbursement from a particular fund rather than from the plan participant generally, the fiduciary's request was for equitable relief and was therefore authorized by § 1132(a)(3). See 547 U.S. at 364-65.  Finally, in CIGNA, the Court held that the types of remedies granted by the district court to a plan beneficiary who sued a plan fiduciary were equitable in nature and thus, fell "within the scope of the term 'appropriate equitable relief' in [§ 1132(a)(3)]."  131 S. Ct. at 1880. Thus, the relevant holdings in Knudson, Sereboff, and CIGNA all concern the type of relief that may be pursued by means of a claim brought under § 1132(a)(3).

In US Airways, which is on appeal to the United States Supreme Court and was argued on November 27, 2012, the Third Circuit held that in an action for "appropriate equitable relief" brought under § 1132(a)(3), the court's power to grant the relief authorized by that statute included the power to apply traditional equitable principles such as unjust enrichment and order reimbursement in an amount less than the full amount of the benefits provided to the participant, notwithstanding language in the plan requiring full reimbursement, if circumstances so warranted.  See 663 F.3d at 676.  In CGI Technologies, the Ninth Circuit reached a similar result in a

case involving a plan that expressly disclaimed the application of both the common-fund doctrine and the made-whole doctrine. See 683 F.3d at 1116, 1128. However, neither the Third Circuit nor the Ninth Circuit decided the proper measure of "appropriate equitable relief" in the cases before them. See US Airways, 663 F.3d at 679; CGI Techs., 683 F.3d at 1124. Rather, each court's decision resulted in a remand for further consideration of what, precisely, would be appropriate equitable relief under the circumstances of each case. See US Airways, 663 F.3d at 679; CGI Techs., 683 F.3d at 1124.

**The Cavanaghs' Motion for Summary Judgment.** Rather than seeking judgment as a matter of law on any of their requests for relief in their summary-judgment motion, the Cavanaghs seek something more limited. Specifically, they ask the court to: (1) "[r]ule that [they] may raise the equitable defenses of the common fund doctrine and/or the make-whole doctrine in response to defendant's claim for equitable relief," Pl.'s Mot. Summ. J. (doc. no. 14) 3; and (2) "[a]llow a factual hearing to determine the amount of defendant's alleged lien and the amounts of any set-offs to which plaintiffs are entitled," id.

The court begins by noting that the argument on which the Cavanaghs base their motion, i.e., that Harris is "effectively overruled" by Knudson, Sereboff, and CIGNA is incorrect. The

11

opinion in Harris concerns the content of the federal common law under ERISA. Knudson, Sereboff, and CIGNA, by contrast, are cases about whether a particular claim may be brought under 29 U.S.C. § 1132(a)(3). Because those opinions say nothing about the content of the federal common law, they may not reasonably be read as overruling Harris.

Turning to the Cavanaghs' request for a ruling that they may raise equitable defenses to NNEBT's claim for reimbursement, to the extent that that request is based on the federal common law under ERISA, Harris controls, and the request must be denied. But, under the holdings of US Airways and CGI Technologies, the Cavanaghs would probably have a right to raise equitable defenses to NNEBT's claims for equitable restitution. The bad news for the Cavanaghs is that US Airways and CGI Technologies represent the minority position on this question. See CGI Techs., 683 F.3d at 1122-23. The good news for the court is that the current circuit split on this issue seems likely to be resolved when the Supreme Court issues its decision in US Airways. Rather than predicting whether the First Circuit would adopt the position taken by the Third and Ninth Circuits, or the one taken by the Fifth, Seventh, Eighth, and Eleventh Circuits, CGI Techs., 683 F.3d at 1122, and running the risk of failing to accurately predict the Supreme Court's resolution of

the circuit split, the sensible course of action is to deny the Cavanaghs' motion for summary judgment and await the Supreme Court's decision in US Airways.

If the Supreme Court affirms the Third Circuit's decision in US Airways, then the Cavanaghs will not need special approval to assert equitable defenses against NNEBT's claim for full reimbursement, which is what they seek in their summary-judgment motion. On the other hand, a Supreme Court reversal of US Airways would seem to be fatal to the requests for relief the Cavanaghs make in their petition.

**NNEBT's Motion for Judgment on the Administrative Record.** NNEBT argues that because Harris is good law – a point on which it is correct – it is entitled to judgment on its claim for full reimbursement under 29 U.S.C. § 1132(a)(3). But, NNEBT's argument that US Airways and CGI Technologies are contrary to Harris is just as erroneous as the Cavanaghs' argument that Harris was overruled by Knudson, Sereboff, and CIGNA. The relevant holdings in US Airways and CGI Technologies concern the equitable powers of a district court ordering relief under 29 U.S.C. § 1132(a)(3), not the content of the federal common law of ERISA, which was the subject of the holding in Harris. Thus, Harris's holding that the common-fund fee-shifting doctrine is not part of the federal common law under ERISA does not: (1) bar

13

a court from considering equitable principles when fashioning relief for claims brought under § 1132(a)(3); or (2) compel a court to order reimbursement in strict accordance with the terms described in the plan document.  Those, of course, are the issues that appear likely to be decided by the Supreme Court in US Airways.  In any event, because Harris is insufficient to entitle NNEBT to judgment on its § 1132(a)(3) claim, its motion for judgment on the administrative record must necessarily be denied.

## Conclusion

For the reasons detailed above, the Cavanaghs' motion for partial summary judgment, document no. 14, and NNEBT's motion for judgment on the administrative record, document no. 15, are both denied.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

March 15, 2013

cc:  Kenneth M. Brown, Esq.
     William R. Cahill, Jr.