**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**


Robert V. Cavanagh
and Rhoda M. Cavanagh

    v.                                    Civil No. 12-cv-394-LM
                                       Opinion No. 2013 DNH 079
Northern New England
Benefit Trust


**O R D E R**

In an order dated April 30, 2012, plaintiffs were directed
to show cause why the court should not grant summary judgment in
favor of Northern New England Benefit Trust ("NNEBT"), sua
sponte, based upon the United States Supreme Court's recent
decision in US Airways, Inc. v. McCutchen, 569 U.S. ___ , 133 S.
Ct. 1537 (2013).  Plaintiffs' show-cause briefing is now before
the court.


**The Legal Standard**

"A district court may grant summary judgment where 'there
is no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law.'"  Barclays Bank PLC v.
Poynter, 710 F.3d 16, 19 (1st Cir. 2013) (quoting Fed. R. Civ.
P. 56(a)).  Typically, summary judgment is granted in response
to a motion by a party, but the court may grant summary judgment

sua sponte.  As the court of appeals for this circuit has

explained:

> In appropriate circumstances, a district court
> may enter summary judgment sua sponte.  Berkovitz v.
> Home Box Office, Inc., 89 F.3d 24, 29 (1st Cir. 1996)
> (citing Celotex Corp. v. Catrett, 477 U.S. 317, 326
> (1986)).  Given the potential unfairness of this
> practice, however, the district court may summarily
> decide a claim on its own initiative only if two
> conditions are met: First, discovery must be
> "sufficiently advanced that the parties have enjoyed a
> reasonable opportunity to glean the material facts."
> Id. at 29.  Second, the court must first "give [ ] the
> targeted party appropriate notice and a chance [in
> accordance with the rules] to present its evidence on
> the essential elements of the claim or defense."  Id.
> In this context, "notice" requires that the nonmovant
> was given "reason to believe the court might reach the
> issue and received a fair opportunity to put its best
> foot forward."  Leyva v. On the Beach, Inc., 171 F.3d
> 717, 720 (1st Cir. 1999) (internal quotation marks and
> citation omitted); see also Stella v. Town of
> Tewksbury, 4 F.3d 53, 56 (1st Cir. 1993) ("[T]he
> notice requirement for sua sponte summary judgment
> demands at the very least that the parties (1) be made
> aware of the court's intention to mull such an
> approach, and (2) be afforded the benefit of the
> minimum 10-day period mandated by Rule 56.")

Wells Real Estate Inv. Trust II, Inc. v. Chardon/Hato Rey

P'ship, S.E., 615 F.3d 45, 51-52 (1st Cir. 2010) (parallel

citations omitted); see also Fed. R. Civ. P. 56(f).  Here, the

first condition is met by the parties' submission of a Joint

Statement of Material Facts ("Jt. Statement") in conjunction

with NNEBT's motion for judgment on the pleadings.  The second

condition is met by the court's show-cause order.  Thus, there

is nothing to prevent the court from granting summary judgment

sua sponte if, indeed, NNEBT is entitled to judgment as a matter
of law on any of the claims in this case.

**Discussion**

In US Airways, "the United States, appearing as amicus
curiae, claim[ed] that the common-fund rule has a special
capacity to trump a conflicting [ERISA] contract." 133 S. Ct.
at 1547.  The Court responded by explaining:

> [I]f the agreement governs, the agreement governs
> . . . . We have no doubt that the common-fund
> doctrine has deep roots in equity.  See Sprague v.
> Ticonic Nat. Bank, 307 U.S. 161, 164 (1939) (tracing
> equity courts' authority over fees to the First
> Judiciary Act).  Those roots, however, are set in the
> soil of unjust enrichment: To allow "others to obtain
> full benefit from the plaintiff's efforts without
> contributing . . . to the litigation expenses," we
> have often noted, "would be to enrich the others
> unjustly at the plaintiff's expense."  Mills v.
> Electric Auto-Lite Co., 396 U.S. 375, 392 (1970); see
> Boeing [Co. v. Van Gemert], 444 U.S. [472,] 478
> [(1980)]; Trustees v. Greenough, 105 U.S. 527, 532
> (1882); supra, at 1545-1546 and n.4.  And as we have
> just explained, principles of unjust enrichment give
> way when a court enforces an equitable lien by
> agreement.  See supra, at 1546-1547.  The agreement
> itself becomes the measure of the parties' equities;
> so if a contract abrogates the common-fund doctrine,
> the insurer is not unjustly enriched by claiming the
> benefit of its bargain.  That is why the Government,
> like McCutchen, fails to produce a single case in
> which an equity court applied the common-fund rule
> (any more than the double-recovery rule) when a
> contract provided to the contrary.  Even in equity,
> when a party sought to enforce a lien by agreement,
> all provisions of that agreement controlled.

133 S. Ct. at 1547-48 (parallel citations omitted).  Based upon
the foregoing, the Court held that "in an action brought under
[29 U.S.C. § 1132(a)(3)] based on an equitable lien by
agreement, the terms of the ERISA plan govern."  Id. at 1551.
The Court then elaborated: "Neither general principles of unjust
enrichment nor specific doctrines reflecting those principles –
such as the double-recovery or common fund rules – can override
the applicable contract."  Id.

Here, the applicable contract provides that "[b]y accepting
benefits under this plan, a Participant . . . agrees to hold the
proceeds of any recovery in trust for the benefit of the plan to
the extent of any payment made by the plan."  Jt. Statement, Ex.
C (doc. no. 13-3).  The contract also includes provisions
directed to two doctrines that reflect the principles of unjust
enrichment.  With respect to the double-recovery doctrine, the
contract states:

> The plan's right of recovery shall be a prior lien
> against any proceeds recovered by the Participant.
> This right of recovery shall not be defeated nor
> reduced by the application of any so-called "Made-
> Whole Doctrine" . . . or any other such doctrine
> purporting to defeat the plan's recovery rights by
> allocating the proceeds exclusively to non-medical
> expense damages.

The "made-whole doctrine" referred to in the contract would
appear to be a variant of the double-recovery rule, which was at
issue in US Airways.  See 133 U.S. at 1546 ("the Sereboffs

4

contended that a variant of the double-recovery rule, called the
make-whole doctrine, trumped the plan's terms).  With respect to
the common-fund doctrine, the contract states:

> • No Participant hereunder shall incur any expenses on
> behalf of the plan in pursuit of the plan's rights
> hereunder, specifically; no court costs, attorneys'
> fees or other representatives' fees may be deducted
> from the plan's recovery without the prior express
> written consent of the plan.  This right shall not be
> defeated by any so-called "Fund Doctrine", "Common
> Fund Doctrine", or "Attorney's Fund Doctrine".

Id.  As the Supreme Court explained in US Airways, if a plan
"wishe[s] to depart from the well-established common-fund rule,
it [must] draft its contract to say so."  133 S. Ct. at 1548.
That is just what NNEBT did in this case; it drafted its
contract to abrogate both the common-fund rule and the made-
whole doctrine.

The Cavanaghs' response to the show-cause order does not
address the made-whole doctrine.  As for the common-fund
doctrine, the Cavanaghs attempt to evade the contractual
language abrogating that doctrine by arguing that while Mr.
Cavanagh, as a plan participant, may not deduct attorney's fees
from the plan's recovery, his attorney may, because his
attorney: (1) obtained and controls the proceeds that have been
recovered from the third-party tortfeasor; and (2) is not bound
by the plan's abrogation of the common-fund doctrine because he
is not a plan participant or a party to the contract containing

the abrogation language.  In so arguing, the Cavanaghs rely upon Great-West Life & Annuity Insurance Co. v. Knudson, 534 U.S. 204 (2002), and analogize the special needs trust established for the plan participant in that case to the attorney's trust account that currently holds the proceeds they recovered from the third-party tortfeasor.

The Cavanaghs misapprehend the import of Great-West.  "The question presented [in that case was] whether [29 U.S.C. § 1132(a)(3)] authorize[d] [an] action by [a plan fiduciary] to enforce a reimbursement provision of an ERISA plan."  534 U.S. at 206.  Thus, Great-West does not stand for the proposition that a plan participant's attorney, by virtue of depositing his client's recovery in his trust account, has a claim to an attorney's fee that is sufficient to defeat an express abrogation of the common-fund doctrine in his client's plan. Finally, while the Cavanaghs accurately quote several statements from US Airways extolling the equitable virtues of the common-fund doctrine, those statements are part of the Court's discussion of how to properly construe a reimbursement provision that does not address the allocation of attorney's fees.  Here, of course, the plan expressly addresses that issue, which "leaves [no] space for the common-fund rule to operate," US Airways, 133 S. Ct. at 1549.

Based upon the Supreme Court's decision in <u>US Airways</u>, NNEBT is entitled to judgment as a matter of law on the Cavanaghs' request for a declaratory judgment that NNEBT's liens are subject to: (1) a one-third deduction for attorney's fees; (2) a pro rata charge for costs; and (3) equitable apportionment.  Necessarily, NNEBT is entitled to judgment as a matter of law on the Cavanaghs' request for an award of attorney's fees.  NNEBT is also entitled to judgment as a matter of law on its claim for an equitable lien, in the amount of $46,949.45, on the Cavanaghs' recovery from the driver who injured Mr. Cavanagh.

All that remains of this case is NNEBT's request for attorney's fees and costs.  Without fully analyzing the issue, the court suspects rather strongly that the facts of this case would not support an award of fees and costs, based upon the language of the contract.  Specifically, the court notes that Mr. Cavanagh did not outright refuse to honor his obligations under the contract but, instead, he interposed a legal argument for a reduced reimbursement that enjoyed judicial support until the Supreme Court decided <u>US Airways</u>.  But, given the substance of the show-cause order, the question of attorney's fees is not properly before the court and, thus, remains to be resolved another day.

7

**Conclusion**

For the reasons detailed above, NNEBT is entitled to summary judgment on all of the claims in this case except for its request for attorney's fees.  Within twenty days of the date of this order, NNEBT shall either file a motion for attorney's fees or notify the court that it does not intend to do so.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

May 23, 2013

cc:  Kenneth M. Brown, Esq.
     William R. Cahill, Jr., Esq.